UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD J. DROGOSCH,

    Plaintiff,

v.

TIM METCALF, RYAN LANDRY, KEVIN
GILLIAM, LT. PANACKIA, MICHAEL
LONG, and JOHN LAZARSKI, in their
individual capacities, and WAYNE COUNTY,

    Defendants.
    _____/

Case No. 05-60071

Honorable John Corbett O'Meara

**OPINION AND ORDER GRANTING THE WAYNE COUNTY DEFENDANTS'
DECEMBER 8, 2006 MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT LAZARSKI'S DECEMBER 21, 2006 MOTION FOR SUMMARY
JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANT
METCALF'S DECEMBER 22, 2006 MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT**

This matter came before the court on Kevin Gilliam, Michael Long, Lt. Panackia, Ryan Landry, and Wayne County's ("the Wayne County defendants") December 8, 2006 motion for summary judgment; defendant John Lazarski's December 21, 2006 motion for summary judgment; and defendant Tim Metcalf's December 22, 2006 motion to dismiss and/or for summary judgment. Plaintiff filed response briefs, and the defendants filed reply briefs. After a number of adjournments, oral argument was heard August 10, 2007.

**BACKGROUND FACTS**

On October 29, 2004, a task force consisting of Wayne County Deputies Ryan Landry and Sgt. Kevin Gilliam, along with State of Michigan Department of Corrections Officer Timothy Metcalf were checking the homes of probationers and parolees in Wayne County as part of OPERATION

SPOTCHECK, a pre-Halloween initiative designed to protect children who, it was feared, might soon be trick-or-treating at the homes of sex offenders.

Defendants Gilliam, Landry, and Metcalf went to the home of plaintiff Edward Drogosch to make sure that he was in compliance with his probation. Plaintiff had pleaded guilty to Criminal Sexual Conduct in the Second Degree before Wayne County Circuit Judge Prentice Edwards and had been sentenced to one year's probation and conditions that included attending Alcoholics Anonymous ("AA") meetings and treatment if needed. Defendants had a copy of the order of probation and a printout from the Michigan Offender Tracking Information System ("OTIS") website[1], which listed Plaintiff as a convicted felon.

The officers knocked on the door of Plaintiff's home, and he answered the door. All of the defendants maintain that Plaintiff consented to their entry of his home. Plaintiff claims that they entered without his consent. However, upon questioning at his deposition, Plaintiff testified as follows:

> Q: At any point in time did you say, "Whoa. What do you guys want? What do you want from me," something like that?
>
> A: No.
>
> Q: Did you ever say, "Why are you in my house?"
>
> A: No.
>
> Q: Did you ever tell them, "Get out of my house?"
>
> A: No.

---

[1] There were some relevant inaccuracies on the OTIS website, specifically, that Plaintiff was a convicted pedophile. This was not true. Plaintiff's victim was a 45-year old woman, and his conviction was for Criminal Sexual Conduct in the Second Degree.

> Q: "You don't have a right to be here?"
>
> A: No.

Drogosch dep. at 78-79.

Because the defendants thought Plaintiff appeared to be visibly intoxicated, they asked him if he had been drinking. He admitted that he had had several beers that evening. Based on the information in the task force file, that one of the conditions of his probation was to attend AA meetings, Defendants believed that Plaintiff was not to consume any alcohol as a condition of his probation.

Plaintiff testified that he walked through his house as the officers followed him. Id. Defendants Gilliam and Landry observed several empty beer cans in the kitchen sink. Defendants asked him if he had a computer in the home. He said yes and led them to the room where his wife was working at the computer. The defendants looked to see if it had been used to view pornography, but they found no evidence of that.

Defendant Metcalf asked Plaintiff if he had any weapons in the home. Plaintiff said he had a firearm and led Metcalf to a night stand in the bedroom where a .38 hand gun was recovered. The gun was not loaded, a trigger lock was on it, and the proper registration was with it.

Defendants arrested Plaintiff for violating the terms of his probation by possessing a firearm and for drinking. There was nothing forceful about Plaintiff's arrest, and he was transported to the Wayne County Jail for booking without incident.

Paperwork was filled out by both the Wayne County defendants and the State of Michigan defendants. Landry completed a Swift Arrest Detainer form, indicating that Plaintiff was arrested and held for violating probation. Landry testified that he received information from Metcalf that

Plaintiff's probation officer (defendant Lazarski) had been notified. Landry himself also took steps to notify the probation officer. "Well typically in this I remember asking agent Metcalf if his probation agent was notified. Mr. Drogosch's probation agent. And agent Metcalf said that he was. I remember also faxing the report, police report that I wrote regarding the arrest to Mr. Lazarski's probation office." Landry dep., Ex. 7 at 14. Landry testified that once he left the jail, he took no further action on the case.

Defendant Metcalf conceded that he did not have the proper paperwork in his possession, so he used the incorrect form to book Plaintiff into the jail. He used a parole detainer form even though he knew Plaintiff was a probationer, not a parolee. Metcalf also knew that a parolee, unlike a probationer, was not entitled to an immediate hearing. Metcalf testified that his primary concern was to get Plaintiff booked and held by the jail, as he feared what might happen if Plaintiff returned home intoxicated and in possession of a gun. It is Metcalf's testimony that he notified Plaintiff's probation officer, defendant Lazarski, as soon as possible that Plaintiff was locked up on a probation violation. Metcalf expected that Lazarski would get Plaintiff to court within the proper time frame.

Defendant Lazarski testified that he received Metcalf's message on the next business day, Monday, November 1, 2004, and that he immediately prepared a motion to show cause and submitted it for typing. Lazarski claims that the motion to show cause would have been filed no later than November 2, 2004.

Metcalf did not hear anything more regarding Plaintiff's case until he received word on November 10, 2004, that Judge Edwards had ordered Plaintiff released from jail. Metcalf then called the jail, telling them to prepare Drogosch to be released, and obtained a Parole Detainer Removal Form. However, when Metcalf and Plaintiff attempted to leave the jail, the staff at the jail

4

still would not release Plaintiff. Plaintiff was finally released the following day, thirteen days following his arrest.

Plaintiff's amended complaint alleges claims brought under 42 U.S.C. § 1983 against defendants Landry, Metcalf, and Gilliam for unlawful arrest and failing to present him to a judge promptly following arrest; against Wayne County for various constitutional violations; against Landry, Metcalf, and Gilliam for unlawful search; and against defendants Panackia, Long, and Lazarski for failure to present him to a judge promptly following arrest. Plaintiffs have stipulated to the dismissal of defendants Wayne County, Panackia, and Long. Four defendants remain, Landry and Gilliam, who filed one dispositive motion together, and Metcalf and Lazarski, who filed separate dispositive motions.

As explained below, the court concludes that, as a matter of law, the plaintiff has no cause of action save that which may be maintained against defendant Metcalf. The fact that no one else, either identified as a defendant or not, is legally responsible for the insult to our system of justice which occurred on October 29, 2004, is in the largest sense, beside the point. Legal protections, Constitutional or otherwise, which protect our citizens are meaningless when law officers, however well intentioned, are ignorant of exculpating facts readily available. Whether it's a good idea or not to drink excessively in your own house, doing so in this case (if it happened) did not amount to a violation of the conditions of his probation by this plaintiff; neither does his possession of a registered gun, under these circumstances, offend the law.

In Anthony Trollope's Phineas Finn, one of his characters, a legal scrivener, believing himself the victim of government interference with his rights, says, "He don't know what patriotism means.

. . . I pays rates for the police to look after rogues, not to haul folks about and lock 'em up for days and nights who is doing what they has legal right to do."

## LAW AND ANALYSIS

The United States Supreme Court has held that states may provide for searches of probationers and their property without a warrant and based on less than probable cause. Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). The Court noted that states have a "special need" to closely supervise probationers to assure the observance of probation conditions. Therefore, as a matter of law, Defendants in this case were not required to show probable cause to search Plaintiff's home.

The United States Court of Appeals for the Sixth Circuit has held that a homeowner's failure to object to police officers entering his home, and instead standing back while officers enter, constitutes consent to enter. United States v. Carter, 378 F.3d 584 (6th Cir. 2004). In Carter, as in this case, officers knocked on the door before entering. None of the officers had a gun drawn, and they were wearing civilian clothes with vests that said "POLICE." The officers identified themselves as such and acted in a non-threatening manner. When the officers requested entry to the room, Carter stood back and allowed them to enter. The Sixth Circuit found that consent need not be given by a "magic word" formula. Instead, the court said, "[A]lthough a man's home is his castle, trumpets need not herald an invitation. The police may be kept out or invited in as informally as any other guest. Carter invited the police in and cannot undo his act in court." Id. at 589.

Nowhere in plaintiff Drogosch's complaint or in his pleadings does he allege that he told the officers that they could not enter his home. And nowhere does he dispute Defendants' description of events, as described in all three of their motions, that Plaintiff led him through his house to let them see his computer and what was on it and then took them to the bedroom to show them where

he kept his gun. Plaintiff's own deposition testimony, cited above, shows that he acquiesced to the officers' entry. There was no illegal entry and no illegal search here.

Plaintiff also claims that the officers falsely arrested him in violation of his Fourth Amendment rights. In order to prevail, Plaintiff must prove a lack of probable cause on the part of the officers. Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988). Probable cause exists where the facts and circumstances within an officer's knowledge, and of which he/she had reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. Brandenberg v. Murphy, 936 F.2d 572 (6th Cir. 1991).

The evidence shows that the officers arrested Plaintiff because they reasonably believed he was in violation of his probation by his drinking[2] and because he was a convicted felon in possession of a firearm. There is no evidence that the officers acted intentionally with the purpose of violating his constitutional rights. Based on the undisputed facts of this case, Defendants had probable cause to arrest him; and their actions were reasonable under the circumstances.

Finally, Plaintiff claims that all of the defendants violated his constitutional rights by failing to take him promptly before the court for a hearing. Defendants claim they are entitled to qualified immunity because they did not intentionally deprive Plaintiff of his constitutional rights. Application of the defense of qualified immunity depends on whether a defendant's conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 638-40 (1987). For the law to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that

---

[2] Although attending AA meetings was a condition of Plaintiff's probation, abstaining from consuming alcohol was not. However, it was reasonable for the officers to believe that Plaintiff's intoxication was a violation based on the information they had at the time.

what he is doing violated that right." Id. at 640.  Moreover, 42 U.S.C. § 1983 requires a showing of responsibility for personal wrongdoing.  Each defendant must be shown to have been personally involved in the alleged unconstitutional activity in order for liability to be imposed under § 1983.  Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982).  Defendants Landry and Gilliam were part of the arrest team only.  They had no involvement in Plaintiff's probation hearing.  Therefore, the only defendants involved in this cause of action are Metcalf and Lazarski.

Once plaintiff Drogosch was in custody, it was defendant Metcalf's duty to document the arrest and notify Plaintiff's probation officer, defendant Lazarski.  Metcalf admits that he filled out a Swift Arrest Detainer form in order to keep Plaintiff in jail even though Metcalf knew that Plaintiff was not a parolee.  The Swift Arrest Detainer that Metcalf filled out contains the following warning:

> Notice: Under Supreme Court Ruling.  Arrested Persons Must Be Arraigned in Court at the Very Next Court Session Without Fail . . . Saturdays, Sundays, Holidays Inclusive.  Failure of the Arresting Police Department to Comply With This Court Ruling Will Make It Responsible for Violating the Prisoner's Legal Rights.

Plaintiff's Ex. H.

Metcalf testified that he was faced with two equally bad choices when he was told by the person at the booking desk that the jail could not house Drogosch without the form.  Metcalf was worried that if Plaintiff returned home intoxicated, he might harm his wife or the victim of his CSC crime, whom Metcalf at that time believed was a child.  Plus, there was the gun.  Therefore, Metcalf decided to hold Plaintiff until he could contact probation agent Lazarski.  Metcalf insists that did not intentionally violate Plaintiff's rights.  "I feel that with what I had to work with and the resources I had to draw from, by putting that detainer on Mr. Drogosch, I didn't do it out of any malice towards him.  It was all I had to work with."  Metcalf dep. at 81.  However, because of the warning

8

prominently displayed on the form itself, there is a genuine issue of material fact regarding whether Metcalf's actions were reasonable under the circumstances.

Defendant Lazarski, though, is entitled to qualified immunity in this case. There is no dispute that he drafted the proper show cause order and submitted it to the typing pool on November 1. It went to the court the following day. Metcalf claims he informed Lazarski that Plaintiff was kept under a parole detainer, which would have put Lazarski on notice to get Plaintiff before a judge as soon as possible. Lazarski claims that Metcalf did not inform him of that. Regardless of whether Lazarski knew, however, he did send a show cause order to the court no later than November 2.

No one is able to explain why it took from November 2 to November 9 for the court to review and rule on the show cause request. Whatever the reason, it was not due to Lazarski's inaction. He claims he did not know that Plaintiff was in jail for over a week until he was contacted by Metcalf on November 10. Lazarski then contacted the judge's chambers, and Plaintiff was released the following day.

## **ORDER**

It is hereby **ORDERED** that defendants Wayne County, Lt. Panackia, and Michael Long are **DISMISSED** from this action.

It is further **ORDERED** that defendants Kevin Gilliam and Ryan Landry's December 8, 2006 motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendant John Lazarski's December 21, 2006 motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendant Tim Metcalf's December 22, 2006 motion to dismiss and/or for summary judgment is **GRANTED** with respect to the claims for unlawful search and

unlawful arrest and **DENIED** with respect to the filing the parole detainer form and thereby failing to present him to a judge promptly following arrest.

s/John Corbett O'Meara  
United States District Judge

Dated:  August 22, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 22, 2007, by electronic and/or ordinary mail.

s/William Barkholz  
Case Manager